UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIMAS CORP.,

    Plaintiff,

v.                                                            Case No. 11-10706
                                                                   Hon. Lawrence P. Zatkoff

WILLIAM E. MEYERS,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 29, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on cross motions by the parties—Defendant's Motion to Compel Arbitration and Dismiss Complaint [dkt 8], and Plaintiff's Motion for Summary Judgment [dkt 13]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion to Compel Arbitration and Dismiss Complaint is DENIED.

**II. BACKGROUND**

This action for declaratory relief involves several different parties and a dispute over retirement benefits. Defendant William Meyers was employed by Plaintiff Trimas Corporation as its controller and chief accounting officer from 1987 until his retirement in 1998. During his employment, Meyers was issued a Supplemental

Employee Retirement Plan ("1995 SERP"). This SERP was in effect when Meyers retired from his position in 1998, at which point Plaintiff maintained full liability to pay benefits to Meyers under the 1995 SERP. Also in 1998, Plaintiff was acquired by non-party MascoTech Inc. ("MascoTech"). MascoTech in turn was acquired by non-party private equity firm Heartland Partners, LLC ("Heartland") in November 2000 and was subsequently renamed "Metaldyne."

Before Heartland's acquisition, MascoTech/Metaldyne amended and enhanced the 1995 SERP to include a provision requiring that if there was a change in control following the acquisition by Heartland, the SERP payments would be accelerated and paid in a lump sum ("2000 SERP"). Notably, under the terms of the 2000 SERP, Metaldyne was responsible for this enhanced benefit. This amended SERP ("2000 SERP") wholly superseded and replaced the 1995 SERP.

As part of the 2000 SERP, MascoTech assumed all of the obligations Plaintiff had under the 1995 SERP, and Meyers waived and released all claims that he may have had against Plaintiff under the provisions of the 1995 SERP. Metaldyne continued to pay the benefits to Meyers under the 2000 SERP.

As part of another corporate reorganization and according to the terms of a stock purchase agreement ("SPA") dated May 12, 2002, Plaintiff agreed with Metaldyne and Heartland that Plaintiff would indemnify Metaldyne for any enhanced/accelerated 2000 SERP plan benefits that Metaldyne might have to pay to Meyers and others. Plaintiff did not assume any direct obligation to Meyers and Meyers is not a party to the May 12, 2002, SPA.

Metaldyne continued to pay SERP benefits to Meyers and his spouse under the 2000 SERP. On or about January 11, 2007, Metaldyne was acquired by Asahi Tec Corporation. Meyers and others asserted that the change in control gave rise to his entitlement to enhanced and accelerated benefits under the 2000 SERP. In response and without any involvement of Plaintiff, Metaldyne unilaterally advised Meyers and the others that it had declared the 2000 SERP invalid.

2

Meyers and others sued Metaldyne under ERISA for the enhanced benefits they claimed they are owed under the 2000 SERP. *See Gardner et al. v. Metaldyne Corp.*, United States District Court Case No. 08-cv-11076 (Hood, J.) ("*Meyers I*"). In *Meyers I*, Meyers (and others) asserted that Metaldyne's refusal to honor its obligations under the 2000 SERP was a breach of the terms of the 2000 SERP and sought to enforce the terms of the 2000 SERP as a valid and binding agreement between Metaldyne and Meyers. Meyers asserted in that case that "Metaldyne is responsible for all benefits under the [2000 SERP]."

In May 2009, while *Meyers I* was still pending, Metaldyne filed for bankruptcy and stopped paying benefits to Meyers and his spouse under the 2000 SERP. The *Meyers I* court stayed the lawsuit as a result of Metaldyne's bankruptcy filing, which remains pending. *See In re Metaldyne*, United States Bankruptcy Court for the Southern District of New York Case No. 09-13412 ("Bankruptcy Case"). Meyers asserted in the Bankruptcy Case that the 2000 SERP is the controlling plan and that he has made a claim for the benefits allegedly due to him and his spouse from Metaldyne under the 2000 SERP. Additionally, Metaldyne and Meyers agreed that the 2000 SERP is the controlling plan in a stipulation filed in the bankruptcy court. *See* Exh. H Stipulation ("[Metaldyne] provides Retiree Benefits . . . to . . . Meyers . . . under a . . . SERP entered into between . . . Meyers and MascoTech Corporation . . . ."

After Metaldyne filed for bankruptcy and stopped paying SERP benefits to Meyers, Meyers submitted written demands to Plaintiff for payment of the SERP benefits. Plaintiff refused Meyers' demands.

On August 20, 2009, Meyers and others filed suit against Heartland in Wayne County Circuit Court, alleging that Heartland and others (collectively "Heartland") tortiously interfered with the 2000 SERP with Metaldyne by allegedly persuading and directing Metaldyne to declare the 2000 SERP invalid. Heartland removed the case to this federal district, where it was assigned to the Honorable Denise Page Hood under case number 09-cv-13292 ("*Meyers II*"). Meyers and others sought to enforce the terms of the 2000 SERP and asserted that the 2000 SERP constitutes a valid contractual relationship between him and Metaldyne.

3

On September 30, 2010, Judge Hood dismissed the complaint in *Meyers II*, finding that because the plaintiffs (including Meyers) already brought suit against Metaldyne in *Meyers I* under ERISA seeking the same remedy—money allegedly owed them under the 2000 SERP—*Meyers II* supplemented or supplanted the ERISA civil enforcement remedy asserted in *Meyers I* and conflicts with the clear congressional intent to make the ERISA remedy exclusive. Accordingly, Judge Hood found plaintiffs' claim to be preempted by ERISA, and directed Meyers and the other plaintiffs to pursue their claim against Metaldyne.

On December 21, 2010, Meyers made a demand for arbitration under the terms of the 1995 SERP, seeking to compel Plaintiff to arbitrate his claim for SERP benefits. In response, Plaintiff filed this action for declaratory relief, requesting that the Court enter an order: (1) declaring that there is no enforceable contract requiring Plaintiff to arbitrate Meyers' claim for SERP benefits; and (2) declaring that Plaintiff is not obligated to pay Meyers' SERP benefits.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. ARBITRATION

Plaintiff argues that the 2000 SERP is the operative agreement, and that it contains no arbitration provision requiring Plaintiff to arbitrate Meyers' claim. Meyers argues that based on Metaldyne's declaration that the 2000 SERP is invalid, the 1995 SERP was reinstated. The Court agrees with Plaintiff and finds that there is no valid arbitration provision requiring Plaintiff to arbitrate.

As noted, the arbitration clause under which Meyers made his demand was part of the 1995 SERP, not the 2000 SERP. Yet Defendant has declared in *Meyers I*, *Meyers II*, and the Bankruptcy Case that the 2000 SERP is the operative agreement. For instance, in his claim against Metaldyne in *Meyers I*, Meyers states: "Metaldyne is responsible for all benefits under the Plan." *See* Dkt. 12, Ex. E. With respect to his claim against Heartland in *Meyers II*, Meyers stated: "[t]he [2000] SERPs constitute a valid contractual relationship between [Meyers] and Metaldyne." Meyers even stipulated in the Bankruptcy Case that the 2000 SERP is the controlling plan. *See* Dkt. 17, Ex. H ("[Metaldyne] provides Retiree Benefits . . . to . . . Meyers . . . under a . . . SERP entered into between . . . Meyers and MascoTech Corporation . . . ."). Notably, *Meyers I* and the Bankruptcy Case are still pending, and it does not appear that Meyers ever withdrew his statements in those cases.

In contrast to his assertions in other pending cases, Meyers takes the opposite position in this case, arguing instead that the 2000 SERP was unilaterally invalidated by Metaldyne. Allowing Meyer's to seek to enforce the terms of the 2000 SERP in one lawsuit, and yet seek to compel arbitration under the 1995 SERP in another is questionable, at best, and the Court finds no basis for allowing Meyers to do so. "[U]nder federal law, stipulations and admissions in pleadings are generally binding on the parties and the court." *Ferguson v. Neighborhood Housing*

5

*Services*, 780 F.2d 549, 551 (6th Cir. 1986); *see also Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). Meyers' attempt to avoid his admissions in other suits by filing a contradictory affidavit here must fail. *See Hughes v. Vanderbilt University*, 215 F.3d 543, 549 (6th Cir. 2000) (finding that parties "are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit."). Therefore, Meyers' inconsistent statements in this case cannot establish that the 2000 SERP is not the operative agreement.

Notwithstanding this, Meyers' argument against the validity of the 2000 SERP is flawed for other reasons. Meyers makes his assertion by relying on Metaldyne's declaration—made without Plaintiff's involvement—that the 2000 SERP was invalid. Assuming this, Meyers then makes his own declaration that the 1995 SERP was somehow re-instated after Metaldyne's purported invalidation of the 2000 SERP. For purposes of the issues before this Court, however, neither Metaldyne's unilateral declaration, nor Meyers' reliance upon it, binds this Court or has the operation of law. This is a declaratory action, not a contract case. The 2000 SERP's validity is an issue is for *Meyers I* Court to decide—not one a non-party (Metaldyne) may adjudicate by fiat. As there is nothing to indicate otherwise, the Court presumes that the 2000 SERP remains effective.

Accepting the terms of the 2000 SERP, the Court finds that Meyers waived all claims against Plaintiff and released it of any obligations it might have had to him under the 1995 SERP, including any agreement to arbitrate a dispute. The 2000 SERP states as follows:

> In consideration of the mutual covenants contained herein, [Meyers'] execution of this Agreement evidences [his] knowing full and final release and discharge, on behalf of [himself], [his] heirs, executors, agents, successors and assigns (including [his] spouse)[,] of [Plaintiff] . . . of and from all claims, demands, actions and causes of action which [Meyers] [has] or had against [Plaintiff] for or by reason of any matter, cause or thing founded in, arising under or derivative of [the 1995 SERP] agreement between [Meyers] and [Plaintiff.]

The 2000 SERP shows Plaintiff has no obligation to go to arbitration, as the arbitration clause was part of the 1995 SERP, not the 2000 SERP. Moreover, even assuming the 2000 SERP was somehow invalidated, there is nothing

6

indicating to the Court that the 1995 SERP containing the arbitration clause would have automatically been reinstated. As such, no reasonable jury could find that Plaintiff is required to arbitrate Defendant's claim for SERP benefits.

### B. PLAINTIFF'S OBLIGATION TO PAY DEFENDANT SERP BENEFITS

Plaintiff also seeks a declaration that it has no obligation to pay Meyers SERP benefits. As discussed above, the Court has no reason to believe that the 2000 SERP is not valid, and Meyers' suit to enforce its terms remains pending in *Meyers I*. Under the terms of the 2000 SERP, Meyers waived all claims against Plaintiff and released it of any obligations it might have had to him under the 1995 SERP. Therefore, to the extent that Meyers seeks payment from Plaintiff under the terms of the 1995 SERP, and given the current posture in *Meyers I*, the Court finds that Plaintiff has no obligation to make SERP payments to Meyers.

### V. CONCLUSION

Accordingly, for the above stated reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [dkt 13] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Arbitration and Dismiss Complaint [dkt 8] is DENIED.

IT IS SO ORDERED.

Date: September 29, 2012

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT JUDGE